# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

DAVID SALLE,

*Plaintiff,*

-against-

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC,

*Defendants.*

**COMPLAINT**

**JURY TRIAL DEMANDED**

By and through the undersigned counsel, Plaintiff David Salle ("Plaintiff"), with knowledge as to his own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that the allegations recited herein have substantial evidentiary support, states as follows:

## Introduction

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"), Plaintiff brings this civil rights action against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (together, Equifax, Experian, and Trans Union are the "CRA Defendants"), to recover actual, statutory, and punitive damages. In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-shifting action.
2. In 1970, Congress passed the FCRA and enshrined within it the "need to insure that consumer reporting agencies" like the CRA Defendants "exercise their grave responsibilities

with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4).

3. "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)." *Dep't. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024).

4. The purpose of the FCRA is "to require that consumer reporting agencies" like the CRA Defendants "adopt reasonable procedures for [reporting information] in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information . . . ." Section 1681(b) (emphasis added). *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (observing that the purpose of the FCRA is to address the "serious problem in the credit reporting industry . . . of inaccurate or misleading information"); *Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (stating that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . .") (citing 116 Cong. Rec. 36572 (1970)).

5. The public policy objectives underlying the FCRA remain relevant and compelling today as ever. As recently as October 2022, Congress recognized systemic "failures to efficiently respond to and resolve credit reporting inaccuracies raised by consumers."[1] The bipartisan subcommittee's investigation found "longstanding problems with" industry "practices for responding to consumers who challenge credit report errors." For example, the investigation

[1] Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports | House Select Subcommittee on the Coronavirus Crisis.

found that the CRA Defendants "disregard millions of disputes each year without investigation" based on "speculative or overly broad criteria," in a manner "contrary to the FCRA." Evidence further suggested that the CRA Defendants "may not be allocating enough staff to adequately investigate disputes."

6. The CRA Defendants' policies and procedures to avoid inaccuracies are so insufficient that they often fail to identify and remove even "facially false data," including entries that are "logically inconsistent" or "impossible."[2]

7. The congressional subcommittee found that the CRA Defendants "have attempted to shift the responsibility–and blame–for the accuracy of consumer report data onto data furnishers."[3] Instead of fulfilling their independent investigatory duties under the FCRA, the CRA Defendants "engage in 'parroting,' a practice of blindly adopting the response of a data furnisher without conducting any independent investigation."

8. On April 8, 2024, the CFPB acknowledged "continuing accuracy problems in the credit reporting system," specifically finding that the CRA Defendants "failed to ensure the accuracy of credit reports, including by failing to exclude information resulting from alleged identity theft."[4] The federal agency found that consumer reporting companies such as the CRA Defendants systematically violated their FCRA obligations to identity theft victims such as Plaintiff, especially their obligation to block the reporting of disputed information.[5]

---

[2] *See generally Advisory Opinion on Fair Credit Reporting; Facially False Data*, Bureau of Consumer Financial Protection, 12 CFR Part 1022 (October 20, 2022).

[3] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 5, 117th Congress (Oct. 13, 2022), https://coronavirus-democrats-oversight.house.gov/sites/evo-subsites/coronavirus-democrats-oversight.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.

[4] *CFPB Finds Violations of Credit Report Accuracy Requirements, Including for Survivors of Human Trafficking, Press Release,* April 8, 2024.

[5] The "companies refused to honor consumer requests to block information associated with identity theft based on overbroad criteria; failed to inform consumers when blocks were denied or rescinded; [and] failed to provide victims of identity theft with summaries of rights." *Id.*

9. Moreover, as of 2024, the CFPB continued to seek repercussions against Defendant Trans Union on account of the fact that Defendant Trans Union "misled millions of consumers" with respect to services related to credit reporting. *See Consumer Financial Protection Bureau v. Transunion, Transunion, LLC, et al.*, No. 22 Cv 1880, 2024 Wl 3888863, at *1 (N.D. Ill. Aug. 20, 2024) (denying Trans Union's motion to dismiss).

10. As recently as January 7, 2025, the CFPB filed a lawsuit against Experian for unlawfully failing to properly investigate consumer disputes. The CFPB alleges that Experian "does not take sufficient steps to intake, process, investigate, and notify consumers about consumer disputes, resulting in the inclusion of incorrect information on credit reports."[6] The CFPB claims that "[w]hen consumers disputed errors on their credit reports, Experian conducted sham investigations rather than properly reviewing the disputes as required by federal law. . . ." The CFPB also alleges that Experian "does not accurately convey all relevant information about disputes to the original furnisher" and that it "routinely and uncritically accepts the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face, or when Experian has other information available that suggests the furnisher is unreliable." The CFPB further maintains that "Experian improperly reinserts inaccurate information into consumer reports. . . ."

11. Even more recently, on January 17, 2025, the CFPB issued an order against Equifax for its failure to conduct proper investigations of consumer disputes. The CFPB found that Equifax "ignored consumer documents and evidence submitted with disputes, allowed previously deleted inaccuracies to be reinserted into credit reports, provided confusing and conflicting letters to consumers about the results of its investigations, and used flawed software code

[6] CFPB Sues Experian for Sham Investigations of Credit Report Errors | Consumer Financial Protection Bureau, (January 7, 2025).

which led to inaccurate consumer credit scores."[7] The CFPB further found that Equifax "violated the FCRA's requirements for investigating and processing consumer disputes and assuring maximum possible accuracy of information on its consumer reports." The CFPB also determined that Equifax violated the law by "using ineffective systems and flawed processes" and by "excessively deferring to furnishers to address disputes." The order requires Equifax to comply with federal law and to pay a $15 million civil money penalty, which will be deposited into the CFPB's victims relief fund.

12. Plaintiff's experience typifies Congress's and the CFPB's findings. Plaintiff disputed a Citicards CBNA Account ("the Citi Account") on the ground that he was a victim of identity theft and that an identity thief had stolen the account and used the account to make fraudulent transactions. Upon information and belief, one or more of the CRA Defendants responded by conducting perfunctory, willfully ignorant investigations of his disputes. One or more of the CRA Defendants thereby willfully violated the FCRA, denying Plaintiff's rights under that statute.

13. Congress's and the CFPB's findings echo what juries and courts have long found in individual cases regarding damages: FCRA violations can have "serious, long-term consequences for consumers, such as blocking access to permanent housing or preventing small businesses from obtaining much-needed lines of credit."[8] Consumers like Plaintiff "are experiencing no small measure of stress, frustration, and financial hardship as a result of [the]

---

[7] *CFPB Orders Equifax to Pay $15 Million for Improper Investigations of Credit Reporting Errors* (January 17, 2025),
https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-equifax-to-pay-15-million-for-improper-investigations-of-credit-reporting-errors/.

[8] *Select Subcommittee Launches Investigation Into Credit Reporting Failures During Pandemic, Press Release*, 117th Congress (May 25, 2022).

failure to correct legitimate errors on their credit reports."[9] As recounted below, Plaintiff was damaged as a result of the CRA Defendants' violations of his consumer rights under the FCRA.

**Plaintiff's Rights as an Identity Theft Victim According to the Identity Theft Resource Center, of which Experian is Affiliated**

14. Founded in 1999, the Identity Theft Resource Center® (ITRC) is a national nonprofit organization established to empower and guide consumers, victims, business and government to minimize risk and mitigate the impact of identity compromise and crime.

15. Experian is a financial supporter of the ITRC, as seen from this screenshot of the ITRC website:

[9] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 7, 117th Congress (Oct. 13, 2022), https://coronavirus-democrats-oversight.house.gov/sites/evo-subsites/coronavirus-democrats-oversight.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.




16. According to the ITRC web page section setting forth the "Foundations of Identity", consumers have the following rights:

a. a right to an unencumbered identity[10]

b. a right to be notified if Plaintiff's identity credentials or data are compromised, used, or misused,

[10] *Foundations of Identity*, Identity Theft Resource Center (accessed February 18, 2025), https://www.idtheftcenter.org/about-us/ (listing Experian as a "financial supporter").

c. a right to remediate/recover Plaintiff's identity without undue burden, financial or otherwise, and

d. a right to be acknowledged as a victim of a crime.

17. Plaintiff contends that, by their respective failures to comply with the FCRA and despite Plaintiff's repeated disputes about identity theft, one or more of the CRA Defendants:

a. encumbered his identity,

b. compromised and/or misused his identity,

c. failed to acknowledge Plaintiff as a victim of a crime in at least one circumstance, and

d. impeded Plaintiff's efforts to recover Plaintiff's identity.

18. As a result, Plaintiff asserts damages for undue burden, financial and otherwise, in Plaintiff's attempts to remediate/recover Plaintiff's identity.

**Summary of Plaintiff's Claims Against the CRA Defendants Pursuant to <u>the Fair Credit Reporting Act and/or New York Fair Credit Reporting Act</u>**

*Violations of FCRA § 1681e(b) and NY FCRA § 380-j*

19. One or more of the CRA Defendants violated FCRA § 1681e(b) when one or more of the CRA Defendants failed to maintain reasonable procedures to assure the maximum possible accuracy when one or more of the CRA Defendants prepared and published one or more consumer report(s) about Plaintiff to third-parties.

20. One or more of the CRA Defendants violated New York General Business Law ("NY FCRA") § 380-j by preparing and publishing one or more inaccurate consumer report(s) about Plaintiff to third parties. Those consumer reports contained inaccurate information about Plaintiff, which one or more of the CRA Defendants knew or had reason to know were inaccurate.

21. Upon information and belief, one or more of the CRA Defendants violated NY FCRA § 380-j (a) (4) by *maintaining in* and reporting from the credit files they maintained about Plaintiff information they had reason to know was inaccurate.

*Violations of FCRA § 1681i and NY FCRA § 380-f*

22. One or more of the CRA Defendants violated FCRA § 1681i(a)(1) and NY FCRA § 380-f(a) by failing to conduct a reasonable reinvestigation of the Citi Account after Plaintiff disputed its accuracy to determine whether they were accurately reporting. A reasonable investigation should have included, and, upon information and belief, one or more of the CRA Defendants' investigations did not include or give appropriate weight to, the following items of information included or identified in Plaintiff's disputes:

   a. Plaintiff's Federal Trade Commission (FTC) Identity Theft Reports;
   b. Account data;
   c. "Red Flags" data (as the term is defined by the FTC Red Flags Rule, 12 C.F.R. §§ 41.90-92, 222.90-91, 334.90-91, 364.100-01, 717.90-91, and 16 C.F.R. § 681.1-2);
   d. The fact that, upon information and belief, all of the fraudulent charges were made in the state of New Jersey, while Plaintiff was in New York and made no purchases in New Jersey during the entirety of the relevant time period; and
   e. All other information included in Plaintiff's disputes and interactions with one or more CRA Defendants as detailed below.

23. Upon information and belief, one or more of the CRA Defendants violated FCRA § 1681i(a)(4) by failing to review and consider all relevant information communicated by

Plaintiff concerning Plaintiff's disputes of the Citi Account, including but not limited to the information listed above.

24. One or more of the CRA Defendants violated FCRA § 1681i(a)(5) and NY FCRA § 380-f(b)(1) by failing to promptly delete the disputed Citi Account data from their credit files for Plaintiff despite the fact that one or more of the CRA Defendants, had they conducted reasonable reinvestigations of Plaintiff's disputes, could not have verified that the disputed information was accurate.

25. One or more of the CRA Defendants violated FCRA §§ 1681i(c) and (b) by failing to clearly note the information in question was disputed by Plaintiff or to provide a clear and accurate codification or summary of Plaintiff's statement of dispute of the Citi Account data in all consumer reports that one or more of the CRA Defendants reported after Plaintiff submitted a statement of dispute.

26. One or more of the CRA Defendants violated NY FCRA §§ 380-f(c)(1)-(4) by failing to include Plaintiff's statement of dispute or a clear and accurate codification or summary thereof in all consumer reports containing the Citi Account that one or more of the CRA Defendants published after concluding their respective reinvestigations of Plaintiff's disputes.

27. One or more of the CRA Defendants violated FCRA § 1681i(c) by failing to clearly note that Plaintiff disputed the Citi Account data in each consumer report that was published subsequent to Plaintiff submitting a statement of dispute.

28. One or more of the CRA Defendants violated NY FCRA § 380-f(c)(4) by failing to clearly note that Plaintiff disputed the Citi Account data in each consumer report that they published after concluding their reinvestigations of Plaintiff's disputes.

29. One or more of the CRA Defendants violated 15 U.S.C. § 1681c-2 by failing to block the reporting of information in Plaintiff's file that Plaintiff identified as having resulted from identity theft.

30. As a direct and proximate result of one or more of the CRA Defendants' violations of the FCRA and NY FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

**Jurisdiction and Venue**

31. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p).

32. Venue is proper in this Court under New York Civil Practice Law and Rules ("CPLR") § 503 because Plaintiff resides in Kings County, New York.

**The Parties**

33. Plaintiff David Salle is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides in Brooklyn, New York.

34. Defendant Equifax Information Services, LLC, is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

35. Defendant Experian Information Solutions, Inc., is an Ohio corporation, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

36. Defendant Trans Union, LLC, is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

**Statement of Facts**

37. Plaintiff is a victim of account takeover identity theft.

38. Upon information and belief, the identity theft caused inaccurate information regarding outstanding balances and delinquent payment history associated with the Citi Account to be placed on Plaintiff's credit reports.

39. The Citi Account was marked as "charged off."

40. Upon information and belief, the Citi Account adversely affected Plaintiff's credit reports and scores with one or more of the CRA Defendants.

*Plaintiff's Disputes*

41. Plaintiff filed disputes ("Disputes") about the Citi Account with each of the CRA Defendants.

42. Plaintiff also notified one or more of the CRA Defendants about the identity theft.

43. Those Disputes included disputes that Plaintiff filed with one or more of the CRA Defendants approximately in each of the following months and years: February 2026, April 2026, and June 2026.

44. One or more of the Disputes included the following:

   a. detailed explanations about what information was inaccurate;

   b. documentation confirming Plaintiff's identification; and

   c. Plaintiff's Identity Theft Report(s) filed with the FTC.

*The CRA Defendants' Responses to Plaintiff's Disputes*

45. Upon information and belief, one or more of the CRA Defendants provided notice of each of the Disputes to the corresponding furnishers pursuant to § 1681i and corresponding provisions of the NY FCRA.

46. In response to the Disputes, one or more of the CRA Defendants failed to comply with their respective obligations pursuant to § 1681i and corresponding duties pursuant to the NY FCRA.

47. One or more of the CRA Defendants also failed to comply with their respective obligations pursuant to § 1681e(b) in response to the Disputes and corresponding duties pursuant to the NY FCRA.

48. Instead, one or more of the CRA Defendants continued to report the Citi Account data on Plaintiff's credit reports and/or maintained the Citi Account data as part of Plaintiff's credit file.

49. One or more of the CRA Defendants did not conduct reasonable reinvestigations or maintain and/or follow reasonable procedures to assure the maximum possible accuracy of the information they reported about Plaintiff and maintained in his file.

50. Instead, upon information and belief, one or more of the CRA Defendants, on one or more occasions, merely parroted the furnisher investigation results.

51. Furthermore, one or more of the CRA Defendants refused to block the disputed information that Plaintiff had identified.

52. Moreover, one or more of the CRA Defendants failed to remove the Citi Account data in a timely fashion, in violation of the FCRA.

53. In addition, one or more of the CRA Defendants verified the Citi Account data.

*Damages*

54. As a result of one or more of the CRA Defendants' misconduct, Plaintiff suffered known and unknown credit damages, including the publication of Plaintiff's information to third parties.

55. Those pecuniary damages included credit harm related to one or more credit applications.

56. At all times pertinent hereto, the conduct of one or more of the CRA Defendants as well as their respective agents, servants, and/or employees, was malicious, intentional, willful, reckless, negligent, and in wanton disregard for the rights of Plaintiff pursuant to the FCRA and/or NY FCRA.

57. As a direct and proximate result of the willful and negligent actions, conduct, and omissions of one or more of the CRA Defendants, Plaintiff suffered cognizable actual damages (both pecuniary and non-pecuniary), including but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

58. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

59. Based on the facts alleged in this Complaint, one or more of the CRA Defendants, by their respective actions and omissions, violated various provisions of the FCRA, including but not necessarily limited to the following provisions:

    a. 15 U.S.C. § 1681c-2 relating to identity theft;

    b. 15 U.S.C. § 1681e(b); and

    c. 15 U.S.C. § 1681i.

60. Due to the violations of the FCRA by one or more of the CRA Defendants, Plaintiff suffered actual damages (both pecuniary and non-pecuniary), including but not limited to, damage to Plaintiff's reputation, embarrassment, humiliation, anguish, and other emotional harm cognizable pursuant to the FCRA.

61. These violations by one or more of the CRA Defendants of §§ 1681c-2, 1681e, and 1681i were willful, rendering one or more of the CRA Defendants liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

62. In the alternative, these FCRA violations by one or more of the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE NY FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

63. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

64. Based on the facts alleged in this Complaint, one or more of the CRA Defendants, by their respective actions and omissions, violated various provisions of the NY FCRA (NY GBL §§ 380-380-u), including, but not necessarily limited to, the following provisions:

    a. General Business Law § 380-f; and

    b. General Business Law § 380-j.

65. These violations by one or more of the CRA Defendants of NY FCRA §§ 380-j and 380-f were willful, rendering one or more of the CRA Defendants liable for actual damages (both pecuniary and non-pecuniary), costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to NY FCRA § 380-l.

66. In the alternative, these NY FCRA violations by one or more of the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to NY FCRA § 380-m.

67. Plaintiff is also entitled to injunctive relief restraining one or more of the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE,** Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against the CRA Defendants:

1. Awarding against each Defendant actual damages, statutory damages, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as NY GBL § 380-l and § 380-m.
2. Ordering one or more of the CRA Defendants to:
   a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom one or more of the CRA Defendants reported consumer credit information; and
   b. send updated and corrected credit report information to all persons and entities to whom one or more of the CRA Defendants reported inaccurate information about Plaintiff within the last three years;
3. Enjoining one or more of the CRA Defendants from violating Plaintiff's NY FCRA and FCRA rights; and
4. Such other and further relief as may be necessary, just, and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to CPLR § 4102 (as well as Federal Rule of Civil Procedure 38), Plaintiff

demands a trial by jury as to all issues so triable.

*/s/ Adam G. Singer*
**Law Office of Adam G. Singer, PLLC**
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
212.842.2428
asinger@adamsingerlaw.com

*Counsel for Plaintiff David Salle*